Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 705 | **DATE** | May 21, 2002 |
| **CASE TITLE** | | *In re: Limberopolous* | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Bank's objections are overrruled. Judgment is hereby entered in favor of Limberopoulos with respect to the Bank's counterclaim. With respect to Limberopolous' objections to the recommendation as to Count I, this case is remanded for further proceedings consistent with this opinion. With respect to the damages calculations, Limberopoulos' objections are overruled. He is entitled to $47,766.36 for the time period beginning on 2/7/97 and ending on 1/3/02. The court notes that its calculations as to post-judgment interest are not set in stone, and that it used the 13/02 date used by the bankruptcy court for the sake of discussion since the case is not over. The clerk is directed to send a copy of this order to Bankruptcy Judge Wedoff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 3 1 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| RTS | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Gus Limberopoulos, ) | 02 C 705 |
| Debtor, ) | |
| ----------------------------------------------) | Appeal from Bankruptcy |
| Peter Limberopoulos, ) | Adversary Proceeding Judgment |
| Plaintiff, ) | in Case No. 00 A 250 |
| ) | |
| v. ) | |
| ) | |
| First Midwest Bank, f/k/a Breman Bank & ) | |
| Trust Co., First Midwest Bank, f/k/a ) | |
| Bremen Bank & Trust Co., not ) | |
| individually but as Trustee under Trust ) | |
| Agreement Number 87-3184, ) | |
| Harry Limberopolous, Gus Limberopolous, ) | |
| Louis Siamatas, and Ted Limberopolous, ) | |
| Defendants. ) | |

DOCKETED

MAY 31 2002

## MEMORANDUM AND ORDER

After the bankruptcy court entered proposed findings of fact and conclusions of law, plaintiff Peter Limberopoulos and counter-plaintiff First Midwest Bank, f/k/a Heritage Bank and Trust Company, not individually but in its capacity as Trustee, filed objections. For the purposes of this order, familiarity with the bankruptcy court's recommendation is assumed. For the following reasons: (1) the Bank's objections as to the attorneys' fee issue are overrruled; (2) this case is remanded for further proceedings consistent with this opinion as to Limberopolous' consumer fraud claim; and (3) Limberopolous' objections as to the damages calculations are overruled and the court, after conducting a de novo review, finds that he is entitled to $47,766.36 for the time period beginning on February 7, 1997, and ending on January 3, 2002.



## I. Standard of Review

In non-core proceedings (*i.e.*, cases that are not directly related to matters arising under Title 11), a bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1). The district court then conducts a de novo review of any portion of the bankruptcy judge's proposed findings of fact and conclusions of law to which a party has made a specific written objection. *See* 28 U.S.C. § 157(c)(1); *see also* Fed. R. Bank. Proc. 9033(d) ("The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions"). Accordingly, the court will conduct a de novo review of the record to resolve the parties' objections.

## II. Discussion

### A. The Bank's Objections

The Bank's objections center around the bankruptcy court's recommendation that judgment be entered in favor of Limberopoulos with respect to the Bank's counterclaim, which sought to recover attorneys' fees incurred in connection with the Bank's defense against counts IV and V of Limberopoulos's complaint. Counts IV and V sought recovery from the Bank for its alleged breach of its fiduciary duties as trustee of a land trust and for breach of that land trust agreement.

The pertinent portion of the trust agreement at issue provides that:

> In case said trustee shall make any advances of money on account of this trust or shall be made a party to any litigation on account of holding title to said real estate or in connection with this trust, or in case said trustee shall be compelled to pay any sum of money on account of this trust, whether on account of breach of contract, injury to person or property, fines or penalties under any law or otherwise, the beneficiaries hereunder do hereby jointly and severally agree that they will on demand pay to said trustee, with interest thereon at the highest rate per annum permitted by law, all such disbursements or advances or payments made by said trustee, together with its expenses, including reasonable attorneys' fees . . .

Land Trust Agreement, ¶ C (Plaintiff's Exhibit 2).

Citing to, among other authority, *Barth v. Reagan*, 146 Ill. App. 3d 1058 (2d Dist. 1986), the bankruptcy court found that a trustee was not entitled to receive fees from the trust beneficiary in connection with a suit brought by the beneficiary for breach of the trustee's fiduciary duties. In its objections, the Bank asserts that the bankruptcy court's reliance on *Barth* – which involved a trust agreement with an attorneys' fee clause identical to the one at issue in this case – was misplaced. The Bank also contends that it is entitled to fees because counts IV and V of Limberopoulos's complaint were groundless and frivolous.

A successful litigant is not entitled to an award of fees from a trust beneficiary "absent a statutory provision or contractual agreement to the contrary," *Hillenbrand v. Meyer Medical Group, S.C.*, 308 Ill. App. 3d 381, 389 (1st Dist. 1999), unless the beneficiary's complaint was groundless or frivolous, *Patterson v. Northern Trust Co.*, 286 Ill. 564, 567 (Ill. 1919), *Webbe v. First National Bank and Trust Company of Barrington*, 139 Ill. App. 3d 806, 888-89 (2d Dist. 1985). Since no statute provides for fees, the court will first consider whether the trust agreement allows the Bank to recover fees incurred in connection with Limberopolous'

voluntarily dismissed claims against the Bank for breach of fiduciary duty and breach of the land trust agreement.

In *Barth*, the court held that the attorney's fee provision was "designed to prevent [the trustee] from having to pay fees arising because of litigation to which it [was] incidentally joined because of its position as trustee" and could not "rationally be construed as allowing a trustee to recover attorneys' fees incurred as a result of litigation involving allegations of misconduct on the part of the trustee." 146 Ill. App. 3d at 1069. The Bank claims that *Barth* is distinguishable because Limberopoulos voluntarily withdrew his claims alleging that the Bank had engaged in misconduct and because those claims were brought to attempt to obtain a higher settlement in related litigation. The court disagrees.

This argument is basically a recasting of the Bank's contention that it is entitled to fees because counts IV and V of Limberopoulos's complaint were groundless and frivolous. The Bank, however, does not appear to have presented this issue to the bankruptcy court. Its briefs do not identify where this argument was presented below, the bankruptcy court's recommendation does not refer to this argument, and the argument is not readily apparent in the record. If a party fails to properly preserve issues for consideration on appeal, they are waived even where the de novo standard of review applies. *In re Kroner*, 953 F.2d 317 (7th Cir. 1992) (de novo review allows the reviewing court to take a fresh look at the way the lower court applied the law to the facts of the case, and does not give the parties a chance to wipe the slate clean and relitigate their case from scratch). Thus, the Bank's arguments flowing from its position that Limberopolous' claims were frivolous or meritless are waived.

This brings the court to the Bank's next argument: that the trust agreement allows it to recover its fees because Count V (breach of the trust agreement) was brought "in connection with the trust" and the trustee was compelled to pay fees and costs "on account of breach of contract."[1] Given the trust agreement's language, this argument is facially appealing. Nevertheless, this court agrees with the *Barth* court that this language requires the beneficiary to indemnify the trustee for expenses incurred by the trustee as a result of its position, as opposed to immunizing the trustee from all expenses, even if they stem from the trustee's allegedly deliberate wrongdoing. Any other construction would violate the well established "[p]ublic policy . . . that a wrongdoer be forbidden to shift the cost of liability to another through insurance or some other form of indemnification . . . in cases of deliberate wrongdoing." *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994). Accordingly, the Bank's objections are overrruled and judgment is entered in favor of Limberopolous with respect to the Bank's counterclaim for attorneys' fees and costs.

### B. Limberopoulos' Objections

In his objections, Limberopoulos asserts that the bankruptcy court misapplied the law with respect to his consumer fraud claim (Count I) by erroneously finding that he had to establish that the Bank intended to commit a deceptive act to enable Limberopoulos to recover under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/1, *et seq.* ("ICFA"). He

---

[1] It will be recalled that the trust agreement provided that if the "trustee shall be compelled to pay any sum of money on account of this trust, whether on account of breach of contract, injury to person or property, fines or penalties under any law or otherwise, the beneficiaries hereunder do hereby jointly and severally agree that they will on demand pay to said trustee . . . all such disbursements or advances or payments made by said trustee, together with its expenses, including reasonable attorneys' fees . . . "

also contends that the bankruptcy court erred when it calculated his damages because it failed to account for the interest charged by the Bank on a $25,000 payment.

### 1. The ICFA (Count I)

As the bankruptcy court correctly observed, to prevail on a claim under the ICFA, a plaintiff must establish that: (1) the defendant committed a deceptive act, such as the misrepresentation or concealment of a material fact; (2) the defendant intended to induce the plaintiff to rely in the deceptive act; and (3) the deceptive act occurred in connection with trade or commerce. *See, e.g., Cripe v. Leiter*, 184 Ill.2d 185, 191 (Ill. 1998). In addition, with respect to the first prong, a "plaintiff need not establish any intent to deceive on the part of the defendant because even an innocent misrepresentation may be actionable under the Act." *Id.*

Here, Limberopolous claims that the Bank violated the ICFA when it failed to notify him that three payments had not been credited against a certain loan in order to induce him to make more payments on that loan, which would also not be credited properly. The bankruptcy court found that the three errors "resulted from isolated incidences of inadvertent error rather than a deceptive scheme to defraud the plaintiff" and thus did not rise to the level of a deceptive act under the ICFA.

The problem with this reasoning is that, as noted above, even innocent misrepresentations can be actionable under the ICFA. *See Cripe v. Leiter*, 184 Ill.2d at 191. The bankruptcy court nevertheless appears to have based its recommendation on the fact that the errors were unintentional. The bankruptcy court also did not address whether the three misrepresentations at issue were material. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 504-05 (Ill. 1996) (a fact is material where a consumer would have acted differently knowing the information, or if it

concerned the type of information upon which a consumer would be expected to rely in making a decision); *see also Skyline International Development v. Citibank*, 302 Ill. App. 3d 79, 85 (1st Dist. 1998) (the ICFA was intended to protect consumers against fraud and unfair or deceptive acts or practices in the conduct of trade or commerce, as opposed to creating a cause of action based on isolated errors). Since the bankruptcy court relied on intent when it recommended that judgment be entered in favor of the Bank with respect to Limberopolous' ICFA claim and did not make findings of fact with respect to materiality, we must remand as to this count.

### 2. Breach of Contract (Count II)

The bankruptcy court found that the Bank had failed to apply three payments towards a loan and recommended that the court award Limberopolous $47,766.44 with respect to his breach of contract count.[2] Limberopolous objects only as to the bankruptcy court's calculation of the pre-payoff interest for a $25,000 payment. Specifically, he contends that the bankruptcy court erroneously failed to account for the interest charged by the Bank on a $25,000 payment made on April 10, 1992, and that he should receive both the overpayment and all of the interest that accrued on the overpayment.

Limberopolous calculates this as an additional $10,579.62 (3 years, 278 days of interest at 11.25% on $25,000). This is incorrect. The $25,000 was not an overpayment. It was the agreed to first installment payment made pursuant to the April 8, 1992, letter agreement between the Bank and Limberopolous. *See* Recommendation at 5-6. The impact of this payment is taken

---

[2] The bankruptcy court's interest calculations are for the time period beginning on February 7, 1997, and ending on the day of its decision, January 3, 2002.

into account in the award to Limberopolous, as detailed in the attached chart summarizing the court's calculations.

The Bank says that the bankruptcy court's interest award gives Limberopolous "full credit for interest on the $25,000 at 11.25% from the original date of payment in April 1992," and claims that Limberopolous is "trying to confuse the District Court in an attempt to obtain a second recovery of interest on the $25,000." Bank's Response at 3. We agree. The Bank's explanation of its calculation method, however, only adds to the confusion.

The only explanation the Bank provides is a summary of its calculation method, which has several problems. First, the Bank erroneously calculated the May 22, 1992, accrued interest because it used the March 5, 1992, principal balance instead of the principal balance that remained after the April 10, 1992, payment. In addition, the Bank's amortization schedule does not include the $8,000 payment on December 7, 1992, and the remaining credit of $2,000 on the January 12, 1993, payment.

In contrast, the bankruptcy court found that the Bank was overpaid by $38,356.07 on February 7, 1997, the date when the loan was paid off. It did not, however, provide a summary of the specific calculations used to arrive at this number. It then awarded Limberopolous interest in the amount of 5% per annum on that amount ($9,410.37 for the period of February 7, 1997 through January 3, 2002).

This court has conducted a de novo review and concludes that the Bank was overpaid by $38,356.00 (seven cents less than the bankruptcy court's figure) and that Limberopolous should have received $9,410.36 in interest for the time period beginning on February 7, 1997, and

ending on January 3, 2002 (one cent less than the bankruptcy court's figure).[3] The attached exhibit lays out this court's methodology. It should be noted that these calculations include the payments not originally credited by the Bank ($25,000 on April 10, 1992, $8,000 on December 7, 1992, and the $2,000 of the $8,000 payment on January 12, 1993). The court used an annual rate of 11.25% and converted that into a daily interest rate. This rate was multiplied by the number of days since the last payment and by the remaining principal balance at that time. Per the letter agreement between the Bank and the plaintiff, the payment amount was first applied to the outstanding accrued interest. Any remaining monies were used to reduce the principal balance.

Using this method, the court determined that as of February 7, 1997, the accrued interest was $102,207.03 and the remaining principal balance was $223,002.70, for a total of $325,209.73. After the addition of appraisal fees, trust fees, legal fees, and foreclosure expenses, the amount due to the Bank was $346,543.94. The Bank was paid $384,899.94 as part of the foreclosure sale. The amount due to Limberopolous from this overpayment is $38,356.00. Using the statutory interest rate of 5%, Limberopolous also was entitled to pre-judgment interest on the overpayment in the amount of $9,410.36. The grand total due to Limberopolous is, therefore, $47,766.36.

### III. Conclusion

The Bank's objections are overrruled. Judgment is hereby entered in favor of Limberopoulos with respect to the Bank's counterclaim, which sought to recover attorneys' fees incurred in connection with the Bank's defense against counts IV and V of Limberopoulos's

---

[3] We assume that the differential between our calculations and the bankruptcy court's figure is due to rounding differences, but because the bankruptcy court did not explain its calculation method in its recommendation, there is no way to know how it arrived at its figure.

complaint. With respect to Limberopolous' objections to the recommendation as to Count I, this case is remanded for further proceedings consistent with this opinion. With respect to the damages calculations, Limberopolous' objections are overruled. He is entitled to $47,766.36 for the time period beginning on February 7, 1997, and ending on January 3, 2002. The court notes that its calculations as to post-judgment interest are not set in stone, and that it used the January 3, 2002, date used by the bankruptcy court for the sake of discussion since the case is not over.

DATE: 5-21-02

Blanche M. Manning
United States District Judge

02cv705.bankruptcyappeal

Interest Rate    11.25%

| Date | Date Value | Description | # of Days | Int Amount | Payment Received | Allocation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Interest | Principal | Total | Accrued Interest | Principal Balance |
| 03/05/92 | 33668 | Balance Carry Forward | | | | | | | $ 5,571.92 | $ 282,070.18 |
| 04/10/92 | 33704 | Interest Accrual | 36 | $ 3,129.82 | | | | | $ 8,701.74 | $ 282,070.18 |
| 04/10/92 | 33704 | Payment | | | $ 25,000.00 | $ 8,701.74 | $ 16,298.26 | $ 25,000.00 | $ - | $ 265,771.92 |
| 05/22/92 | 33746 | Interest Accrual | 42 | $ 3,440.47 | | | | | $ 3,440.47 | $ 265,771.92 |
| 05/22/92 | 33746 | Payment | | | $ 8,000.00 | $ 3,440.47 | $ 4,559.53 | $ 8,000.00 | $ - | $ 261,212.39 |
| 07/01/92 | 33786 | Interest Accrual | 40 | $ 3,220.43 | | | | | $ 3,220.43 | $ 261,212.39 |
| 07/01/92 | 33786 | Payment | | | $ 8,000.00 | $ 3,220.43 | $ 4,779.57 | $ 8,000.00 | $ - | $ 256,432.82 |
| 07/31/92 | 33816 | Interest Accrual | 30 | $ 2,371.13 | | | | | $ 2,371.13 | $ 256,432.82 |
| 07/31/92 | 33816 | Payment | | | $ 8,000.00 | $ 2,371.13 | $ 5,628.87 | $ 8,000.00 | $ - | $ 250,803.95 |
| 09/16/92 | 33863 | Interest Accrual | 47 | $ 3,633.22 | | | | | $ 3,633.22 | $ 250,803.95 |
| 09/16/92 | 33863 | Payment | | | $ 8,000.00 | $ 3,633.22 | $ 4,366.78 | $ 8,000.00 | $ - | $ 246,437.17 |
| 10/09/92 | 33886 | Interest Accrual | 23 | $ 1,747.00 | | | | | $ 1,747.00 | $ 246,437.17 |
| 10/09/92 | 33886 | Payment | | | $ 8,000.00 | $ 1,747.00 | $ 6,253.00 | $ 8,000.00 | $ - | $ 240,184.17 |
| 10/27/92 | 33904 | Interest Accrual | 18 | $ 1,332.53 | | | | | $ 1,332.53 | $ 240,184.17 |
| 10/27/92 | 33904 | Payment | | | $ 8,000.00 | $ 1,332.53 | $ 6,667.47 | $ 8,000.00 | $ - | $ 233,516.70 |
| 12/07/92 | 33945 | Interest Accrual | 41 | $ 2,950.95 | | | | | $ 2,950.95 | $ 233,516.70 |
| 12/07/92 | 33945 | Payment | | | $ 8,000.00 | $ 2,950.95 | $ 5,049.05 | $ 8,000.00 | $ - | $ 228,467.65 |
| 01/12/93 | 33981 | Interest Accrual | 36 | $ 2,535.05 | | | | | $ 2,535.05 | $ 228,467.65 |
| 01/12/93 | 33981 | Payment | | | $ 8,000.00 | $ 2,535.05 | $ 5,464.95 | $ 8,000.00 | $ - | $ 223,002.70 |
| 02/07/97 | 35468 | Interest Accrual | 1487 | $ 102,207.03 | | | | | $ 102,207.03 | $ 223,002.70 |

| 02/07/97 | 35468 | Total P&I Payoff | | $ 325,209.73 |
|---|---|---|---|---|
| | | Appraisal Fee | | $ 400.00 |
| | | Trust Fees | | $ 2,173.50 |
| | | Legal Fees | | $ 15,850.00 |
| | | Foreclosure Expenses | | $ 2,910.71 |
| | | Total | | $ 346,543.94 |

Actual Amount Paid to Bank    $ 384,899.94

| 01/03/02 | 37259 | Prejudgment Interest | | |
|---|---|---|---|---|
| | | Amount Owed to Plaintiff | | $ 38,356.00 |
| | | Prejudgment Interest | | $ 9,410.36 |
| | | Total Judgment to Plaintiff | | $ 47,766.36 |

Statutory Interest Rate    5%